# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| JAMES MURPHY, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of the )<br>Social Security Administration, )<br>    Defendant. ) | CAUSE NO.: 2:16-CV-361-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff James R. Murphy on August 10, 2016, and the Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 9], filed by Plaintiff on December 27, 2016. Plaintiff requests that the decision of the Administrative Law Judge be reversed with an award of benefits or remanded for further proceedings. On April 6, 2017, the Commissioner filed a response, and on April 20, 2017, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.     Procedural Background**

On February 5, 2013, Plaintiff filed an application for benefits alleging that he became disabled on May 31, 2011. Plaintiff's application was denied initially and upon reconsideration. On November 10, 2014, Administrative Law Judge ("ALJ") Lorenzo Level held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On January 28, 2015, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.     The claimant met the insured status requirements of the Social Security Act

through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date of May 31, 2011.

3. The claimant has had severe impairments of degenerative disc disease and degenerative joint disease of the knees.

4. Since the alleged onset date, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b) except he can never climb ladders, ropes, or scaffolds, can only occasionally climb ramps and stairs, and is limited to no more than occasional stooping, kneeling, crouching, and crawling. He must also avoid concentrated exposure to extreme cold and vibrations.

6. The claimant is capable of performing past relevant work as a tool room operator as actually performed. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. Because he could perform past relevant work as performed, the claimant was not under a disability, as defined in the Social Security Act, from his alleged onset date through the date of the ALJ's opinion.

On June 14, 2016, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(a).

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

II. **Standard of Review**

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow

the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ erred in weighing medical opinion evidence, in assessing Plaintiff's RFC, and in evaluating Plaintiff's subjective symptom statements. The Commissioner argues that the ALJ's conclusions regarding the opinion evidence and Plaintiff's testimony are supported by substantial evidence, and that he did not commit reversible error in assessing Plaintiff's RFC.

Plaintiff contends that, in weighing the available medical opinions, the ALJ failed to apply the required "checklist" of factors, and therefore erred in assigning only "little weight" to the opinion of consultative examiner Dr. Smejkal. The Commissioner responds that the ALJ thoroughly explained his reasoning for weighting the opinion of testifying medical expert Dr. McKenna more highly than that of Dr. Smejkal.

Examining physician Dr. Smejkal completed a medical source statement addressing

4

Plaintiff's ability to work. He specifically addressed Plaintiff's physical limitations in his opinion. However, the ALJ gave this opinion "little weight" in favor of the opinion of testifying medical expert Dr. McKenna, to which he accorded "significant weight." Generally, the opinion of a physician who has examined the patient is given more weight than that of a physician who has only reviewed the medical record. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Vanprooyen v. Berryhill,* 864 F.3d 567, 573 (7th Cir. 2017) (quoting *Gudgel,* 345 F.3d at 470); *see also Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016) ("[T]he problem is that the ALJ has not pointed to any logical reason to discount the opinions of the only examining mental-health professionals, one of whom was the state agency's own consultative examiner, in favor of a non-examining reviewer."); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

In this case, the only reasons the ALJ gave for giving the opinion of the non-examining physician more weight were that Dr. McKenna's opinion was more consistent with the record evidence and that "some restrictions" attested to by Dr. Smejkal were "so greatly inconsistent with the subject examination that the undersigned is persuaded that the document is generally a statement of claimant's subjective complaints." AR 39. Even if it were true "some" of the limitations imposed by Dr. Smejkal were not reflected in his exam notes, that alone would not be sufficient reason to reject the entire opinion, and the ALJ did not explain which of the restrictions he found to be "greatly inconsistent" with the exam notes. Indeed, some of the restrictions opined to by Dr. Smejkal appear to align very well with the physical exam. For example, Dr. Smejkal noticed that, although

5

Plaintiff appeared to sit comfortably, he walked with an antalgic gait, and rose from a seated to a standing position only "with difficulty." Those findings appear to support Dr. Smejkal's opinion that Plaintiff was limited in his ability to stand for long periods. The ALJ rejected that finding, and instead adopted Dr. McKenna's opinion that Plaintiff could stand or walk for six hours in a workday, without explaining how he considered Dr. Smejkal's exam notes in that decision. Similarly, Dr. Smejkal observed that Plaintiff was unable to squat or stoop completely, and that, in range of motion tests, he could only bend his knee to 90 degrees (compared to a normal range of motion of 150 degrees) and also had limited ranges of motion in his lumbar spine. The ALJ did not explain how he considered those findings when he rejected Dr. Smejkal's opinion that Plaintiff could never stoop, crawl, or crouch at work, in favor of Dr. McKenna's finding that he could perform those actions "occasionally," or up to one-third of the work day.

The failure to credit an examining physician over a non-examining physician, with inadequate explanation, is exacerbated by the ALJ's failure to include a description of how the RFC incorporated Plaintiff's functional limitations as reflected in the medical records. Plaintiff argues that the ALJ erred in crafting an RFC that omitted some of Plaintiff's functional limitations and in failed to consider the aggregate effects of his impairments. The Commissioner argues that Plaintiff has not shown that there are functional limitations beyond those incorporated into the RFC.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). Although an ALJ is not required to discuss every piece

of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

The ALJ's failure to adequately explain his weighing of opinion evidence left significant logical gaps in his RFC analysis. Relying on the opinion of Dr. McKenna, the ALJ found that Plaintiff could perform light work, which requires a person to stand for up to six hours out of an eight hour workday. As Plaintiff argues, there is ample evidence in the record that Plaintiff needs to be able to sit or stand basically at will, but the ALJ failed to explain either how this need is incorporated in the RFC or why he completely disregarded it, despite his acknowledgment that Plaintiff has been successful at maintaining some level activity when he can alternate between sitting and stating.

The Court is also concerned with the ALJ's reliance on Plaintiff's daily activities in support of his finding that Plaintiff is capable of doing light work. Plaintiff's ability to assist with food preparation, cut the grass with breaks, and go for walks does not rise to the level of work, particularly given the evidence that Plaintiff sits or takes breaks when performing all of these activities. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as []he would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law

7

judges in social security disability cases."); *see also Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) (explaining that a plaintiff's ability to complete activities of daily living does not mean that she can manage the requirements of the workplace). The ALJ also stated that Plaintiff "enjoys fishing [and] hunting" and "reported to his doctors that he performed gardening," but as Plaintiff points out in his brief, fishing and hunting were listed as "interests," not as current activities, in one of Plaintiff's exams, and Plaintiff testified that despite his former love of fishing, in more recent attempts he had trouble performing the postural maneuvering necessary to get in and out of the boat. AR 85-86. Likewise, there is no record evidence that Plaintiff has done any actual hunting since his onset date.

The ALJ made several statements about Plaintiff's abilities that are not reflected in the RFC finding. For example, the ALJ wrote that Plaintiff testified "that sitting helps relieve his symptoms of low back pain[, and] specifically stated that when he sits, his symptoms resolve, which allows him to continue his activity." This statement seems to acknowledge that Plaintiff can work while sitting, but any work consistent with that restriction would be sedentary work or work with a sit/stand option. However, the ALJ found that Plaintiff has the RFC to do "light work," defined as standing or walking for up to 80% of a work day, with no mention of a sit/stand option. Similarly, the ALJ acknowledged that during a consultative exam, Plaintiff was unable to stoop and squat completely. He did not explain how he accounted for this finding when he found that Plaintiff was able to stoop, kneel, crouch, and crawl "occasionally," which is defined as up to 20% of the work day. There is a large logical gap between a medical finding that a person cannot perform a given action even once during a medical exam to the finding that he can perform that same action up to 20% of an eight-hour workday, on a consistent basis, in the work setting. In short, the Court is unable to trace the

ALJ's reasoning from these statements to his RFC findings. The ALJ erred in overlooking an entire line of evidence suggesting that Plaintiff needs opportunities to sit throughout the day; this error mandates remand. *Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009) ("Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling.").

## IV.   Remedy

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. In this case, the ALJ failed to adequately explain his weighting of the opinion evidence in light of Dr. Smejkal's exam findings and other record evidence, and he failed to draw a logical bridge from the evidence to his conclusions regarding Plaintiff's RFC. Although Plaintiff requests an award of benefits, factual issues remain unresolved in this case. The ALJ must review the record in accordance with the regulations, properly analyze the medical opinion evidence, and fully explain how all of Plaintiff's limitations are incorporated into the RFC. These are issues that can only be resolved through further proceedings on remand. Accordingly, this matter is remanded for further proceedings.

In addition, if the ALJ again finds that Plaintiff is capable of his past relevant work as performed, he should support with substantial evidence his finding that Plaintiff actually performed his past work at a light level of exertion; the vocational expert testimony is at best ambiguous on this point.

9

## V. Conclusion

For the foregoing reasons, the Court hereby **GRANTS in part** the relief requested in Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 9] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 28th day of September, 2017.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record